Raed Gonzalez, Esq.
GONZALEZ OLIVIERI, LLC
2200 Southwest Freeway, Suite 550
Houston, Texas 77098
Tel: 713-481-3040
Fax: 713-588-8683
*Counsel of Record for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| Javier Orlando Osorto,<br><br>        *Plaintiff*,<br><br>              v.<br><br>Pete T. Gaynor, Acting Secretary of the U.S. Department of Homeland Security; Kenneth T. Cuccinelli, Acting Director of the U.S. Citizenship and Immigration Services; Wallace L. Carroll, Houston Field Office Director of the U.S. Citizenship and Immigration Services,<br><br>        *Defendants*. | Case No. 4:21-cv-162<br><br><br>Date: January 18, 2021 |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

This is a complaint for relief under the Administrative Procedure Act ("APA"). The Plaintiff, Javier Orlando Osorto, files the instant complaint against Defendants because the U.S. Citizenship and Immigration Services ("USCIS"), a federal agency within the Department of Homeland Security ("DHS"), violated the APA when it administratively closed Plaintiff's I-485, Application to Register Permanent Residence or Adjust Status ("I-485 Application"), based on lack of jurisdiction. *See* Exhibit 1—Notice of Administrative Closure.

For years, it was the USCIS's policy that it retained jurisdiction over adjustment of status applications filed by applicants who were "arriving aliens," like Plaintiff. Exhibit 2—Previous USCIS Policy Memorandum; Exhibit 3—Previous USCIS Policy Manual at Vol. 7, Part A, Ch. 3, Sec. D. Now, however, with an absolute disregard for the Immigration and Nationality Act ("INA"), the Federal Regulations, and the Board of Immigration Appeals' ("BIA") case law, the USCIS has reversed its years-old policy and decided that individuals who have Temporary Protected Status ("TPS"), final orders of removal, and who travel and return on advance parole, are not "arriving aliens," but aliens who have returned to the status of TPS holders with final orders of removal or deportation. *See* Exhibit 4—Current USCIS Policy at Vol. 7, Part B, Ch. 2, Sec. A5.

By following this new policy and administratively closing Plaintiff's I-485

Application, Plaintiff maintains that the USCIS has acted arbitrarily, capriciously, not in accordance with the law, and abused its discretion.

Moreover, the application of the new, erroneous USCIS policy retroactively to Plaintiff's case violated Plaintiff's Fifth Amendment Due Process rights under the Constitution. Therefore, the USCIS has violated the APA on this basis as well. *See* 5 U.S.C. § 706(2)(B).

Plaintiff seeks *de novo* review of the USCIS's final agency decision and a declaratory judgement that: (1) the USCIS's new policy violates the notice and comment provisions of the APA; (2) that the USCIS has jurisdiction to adjudicate his I-485 Application; (3) that it acted arbitrarily, capriciously, and not in accordance with the federal regulations, the BIA case law, and the USCIS's prior policies, when it administratively closed said I-485 Application; (4) that the USCIS's new policy cannot be retroactively applied to Plaintiff's I-485 application because that violates the APA and Plaintiff's due process rights under the Fifth Amendment of the United States Constitution; and (5) that the USCIS's new policy and any changes to the Policy Manual are invalid because, at the time of their approval, adoption, and publication, neither the Secretary of Homeland Security nor the Director of USCIS was validly appointed or confirmed and lacked the authority to make or issue policy for the agency. Plaintiff also seeks relief under the APA to compel the USCIS to reopen and to adjudicate his I-485 Application on the merits.

3

The instant action is being filed against the following Defendants: Pete T. Gaynor, in his official capacity as the Acting Secretary of the DHS; Kenneth T. Cuccinelli, in his official capacity as the Acting Director of the USCIS; and Wallace L. Carroll, in his official capacity as the Houston Field Office Director of the USCIS.

## I.  INTRODUCTION

1.  Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Division C of Pub. L. 104-208, 110 Stat. 3009-546 (1996), aliens in immigration court proceedings were placed in either exclusion or deportation proceedings.[1] In exclusion proceedings, the alien had to have demonstrated that he or she was admissible to the United States. By contrast, in deportation proceedings, the former Immigration and Naturalization Services ("INS"), had to meet its burden to show that the alien was deportable.

2.  Whether an alien was placed in exclusion or deportation proceedings turned on whether the alien had made an "entry." Persons in exclusion proceedings were deemed *not* to have "entered" the United States. Therefore, persons in exclusion proceedings were in the same situation as "arriving aliens" now, i.e., as noncitizens who are deemed *not* to have been admitted to the United States. *See* 8 U.S.C. § 1101(a)(13)(B). Essentially, "arriving aliens" are considered, in legal

---

[1] After the enactment of IIRIRA, exclusion and deportation proceedings were consolidated into one type of proceedings: removal proceedings. *See* 8 U.S.C. § 1229a.

4

terms, to be standing at the border and not technically in the United States.

3. Whether an alien was in exclusion proceedings and had a final order of exclusion, or whether an arriving alien is currently in removal proceedings or has a final removal order, they are able to adjust their status to that of a lawful permanent resident with the USCIS, in accordance with the USCIS's long-standing prior policy. *See* Exhibits 2—3, *supra*; *see also Matter of Yauri*, 25 I&N Dec. 103, 106-07 (BIA 2009) (finding that "arriving aliens" with final removal orders can only adjust their status with the USCIS); *Matter of Castro*, 21 I&N Dec. 379 (BIA 1996) (finding that jurisdiction over adjustment applications filed by aliens in exclusion proceedings lies with the former INS).

4. Sometime in 2018, the USCIS began arbitrarily denying or administratively closing some applications for adjustment of status for lack of jurisdiction, in direct violation of its policy manual and memorandum in place at the time, case law, and the federal regulations, while arbitrarily granting other adjustment applications, as noted further *infra*.

5. On December 20, 2019, the USCIS published a new rule, which stated that the USCIS lacks jurisdiction for "arriving aliens" who have TPS and final removal orders. *See* Exhibit 4, *supra*. By publishing this new rule, the USCIS has not only contradicted well-established case law and regulations, but it has also irrationally departed from years and years of established policy, which, as noted previously,

stated that the USCIS had exclusive jurisdiction to adjust applications for adjustment of status filed by "arriving aliens."

6. In Plaintiff's view, the USCIS's new policy is arbitrary, capricious, an abuse of discretion, not in accordance with the law, and also was enacted without proper notice and comment period. Accordingly, the USCIS's new policy violates the APA. *See* 5 U.S.C. §§ 553, 706(2).

7. By retroactively applying the new policy to Plaintiff's case, the USCIS has also violated the APA and Plaintiff's Fifth Amendment Due Process rights. *See Dep't of Homeland Sec. v. Regents of Univ. of California*, 140 S.Ct. 1891, 1913 (2020) (finding that when an agency changes course, it must be aware that reliance interests must be taken into account (citing to *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016)); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) (retroactivity of a new policy is not permitted when said policy would compromise "familiar [due process] considerations of fair notice, reasonable reliance and settled expectations").

8. Retroactive application of the USCIS's new rule will not only affect Plaintiff herein, but it would also affect thousands of individuals who filed their applications for adjustment of status prior to the enactment of the new rule. Those cases, like Plaintiff's, will be administratively closed or outright denied because of this rule.

9. Moreover, the retroactive application of the new rule will affect thousands of adjustment applications that were granted prior to the enactment thereof. Using this new rule, the USCIS could rescind those adjustment applications, or they could deny citizenship to those lawful permanent residents on the basis that their adjustment of status was improperly granted.

10. The retroactive application of the USCIS's new policy will affect thousands of individuals who have obtained U.S. citizenship after their status was adjusted to that of a lawful permanent resident because the government could initiate denaturalization process, if it determines that individuals were not eligible for adjustment of status in the first place.

11. Plaintiff further challenges the legality of the new policy as it was promulgated by "acting" officials who did not have the authority to do so.

12. Plaintiff has exhausted his remedies in this case and is not required to do anything further. The USCIS decision explicitly states that there is no appeal from its decision to administratively close Plaintiff's I-485 Application. *See* Exhibit 1, *supra*. It is thus considered a "final" agency action subject to judicial review by this Court for which there can be no judicially-imposed exhaustion requirement. *See Darby v. Cisneros*, 509 U.S. 137, 147 (1993); *see also* 5 U.S.C. § 704.

13. In sum, the decision of the USCIS to administratively close Plaintiff's I-485

Application, which was based on the Service's new policy, should be reversed. Therefore, this Court should order the USCIS to reopen and adjudicate Plaintiff's I-485 Application on the merits, in accordance with the plain language of the law.

## II.   JURISDICTION AND VENUE

14. This action arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, and the APA, 5 U.S.C. §§ 701 *et seq*. Because this action arises under the federal laws of the United States, subject-matter jurisdiction is proper under 8 U.S.C. § 1331.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (e) because all relevant actions, including the submission and administrative closure of Plaintiff's I-485 Application, occurred in the USCIS's field office in Houston, Texas.

## III.   PARTIES

16. Plaintiff, Javier Orlando Osorto, is a resident of Pearland, Texas. *See* Exhbit 1, *supra*.

17. Defendant Pete T. Gaynor is sued in his official capacity as Acting Secretary of Homeland Security. He may be served at 2707 Martin Luther King, Jr. Avenue, SE, Washington, D.C. 20528.

18. Defendant Kenneth T. Cuccinelli is sued in his official capacity at Acting Director of the USCIS. He may be served at 20 Massachusetts Avenue, NW,

Washington, D.C. 20529.

19. Defendant, Wallace L. Carroll, is the USCIS Houston Field Office Director. He is sued in his official capacity. He may be served at 20 Massachussetts Ave., Room 4210, Washington D.C. 20529.

## IV.   STATUTORY AND REGULATORY BACKGROUND

20. Under 8 U.S.C. § 1255(a), an alien may adjust his or her status to that of a lawful permanent resident provided that: (1) the alien was inspected and admitted or paroled into the United States; (2) the alien makes such an application for adjustment of status; (3) the alien is eligible to receive an immigrant visa; (4) the alien is admissible to the United States; and (5) a visa is immediately available to him or her when the adjustment of status application is filed.

21. The USCIS has the jurisdiction to adjudicate an adjustment of status application unless the immigration judge has jurisdiction. 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1).

22. The immigration judge has exclusive jurisdiction to adjudicate any application for adjustment of status if the alien is in removal or deportation proceedings (other than an "arriving alien"). 8 C.F.R. § 1245.2(a)(1).

23. An "arriving alien" is one who is "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in

international or United States waters and brought into the United States by any

means, whether or not to a designated port-of-entry, and regardless of the means

of transport." 8 C.F.R. § 1.2.

24. "An arriving alien remains an arriving alien even if paroled pursuant to section

212(d)(5) [8 U.S.C. § 1182(d)(5)] of the Act." *Id.*

25. The immigration judge can only have jurisdiction over adjustment applications

filed by "arriving aliens" if: (1) the alien properly filed the application with the

USCIS while the alien was in the United States; (2) the alien departed and

returned to the United States pursuant to a grant of advance parole; (3) the

application was denied by the USCIS; and (4) the DHS placed the alien in

removal proceedings *after* the alien's return to the United States on advance

parole or *after* the application was denied. 8 C.F.R. § 1245.2(a)(1)(ii).

26. If the USCIS administratively closes an adjustment of status application on the

grounds that it lacks jurisdiction to adjudicate it, the administrative closure would

be considered the final agency action in the case. As such, no administrative

remedies would be left available to an applicant and the only option is to

judicially assert a violation under the APA. 5 U.S.C. §§ 702, 704.

27. "Agency action" is defined to include the whole or a part of an agency rule,

order, license, sanction, relief, or the equivalent or denial thereof, or failure to

act. 5 U.S.C. § 551(13).

28. The reviewing court is authorized to compel action by an agency, and hold its actions unlawful and set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

29. Additionally, a reviewing court is authorized to strike down a rule when the DHS fails to follow the notice and comment procedures. 5 U.S.C. § 553(b)-(d).

30. The Appointments Clause of the U.S. Constitution provides that, the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers, of the United States" though Congress may "by Law vest the Appointment of such inferior Officers as they think proper, in the President alone, in the Courts of Law, or in the Heads of the Departments." U.S. Const. Art. II, § 2, cl. 2.

31. The Federal Vacancies Reform Act, 5 U.S.C. § 3345 et seq. ("FVRA"), is the "exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate" ("PAS Positions"), unless a statute provides otherwise. 5 U.S.C. § 3347(a).

## V.   FACTUAL BACKGROUND

32. Effective March 1, 2003, the DHS assumed responsibility for the functions of

11

the agency formerly known as the "Immigration and Naturalization Service." The Secretary of DHS is now vested with "[a]ll authorities and functions of the Department of Homeland Security to administer and enforce the immigration laws." 8 C.F.R. § 2.1.

33. The USCIS is a bureau within the DHS and delegated supervisory authority over all operations by the Secretary of DHS. *Id.* The USCIS is responsible for accepting and adjudicating all applications for adjustment of status, unless, as detailed above, jurisdiction lies with the immigration judge.

34. The USCIS Houston Field Office is an agency within the DHS and delegated supervisory authority over all operations by the Secretary of DHS. *Id.* The USCIS Houston Field Office is the office with jurisdiction over the administrative closure of Plaintiff's I-485 Application.

35. Plaintiff is a native and citizen of Honduras. *See* Exhibit 5—Parole Document; Exhibit 6—Form I-94. He was granted voluntary departure by an immigration judge on January 29, 2003. *See* Exhibit 1, *supra*. He failed to depart the United States within the voluntary departure time period, and so, his grant of voluntary departure converted into an order of removal. *See* 8 C.F.R. § 1240.26(d).

36. On November 25, 2018, Plaintiff was paroled into the United States by the DHS pursuant to his grant advance parole, which he received through the grant of TPS. *See* Exhibits 5—6, *supra*.

37. By virtue of being the beneficiary of an I-130 family visa petition filed on his behalf, Plaintiff filed an I-485 Application with the USCIS, on or about March 27, 2019. *See* Exhibit 1, *supra*.

38. On December 20, 2019, the USCIS issued an alert stating it was "updating the USCIS Policy Manual to clarify the effect of travel outside the United States by temporary protected status (TPS) beneficiaries who have final removal orders."[2] The USCIS subsquently amended its policy manual by adding a new section, which states that aliens who have TPS, have removal orders, and travel and return to the United States pursuant to a grant of advance parole, are not "arriving aliens," but are instead inspected and admitted in the status of an alien with TPS and a final removal order. *See* Exhibit 4, *supra* at Vol. 7, Part B, Ch. 2, Sec. A5.

39. Rather than adjudicating Plaintiff's I-485 Application on the merits, the USCIS applied its new policy retroactively and administratively closed Plaintiff's application on the grounds that it lacked jurisdiction to adjudicate it. *Id.* In administratively closing the I-485 Application, the USCIS alleged that because Plaintif's removal proceedings have not been terminated, and because Plaintiff has TPS, he returned to the status of an alien with TPS and an outstanding removal order when he was paroled into the United States. *Id*. Accordingly, the

---

[2] *Policy Alert, Effect of Travel Abroad by Temporary Protected Status Beneficiaries with Final Orders of Removal*, USCIS, Dep't of Homeland Security (Dec. 20, 2019). https://www.uscis.gov/sites/default/files/policy manual/updates/20191220-TPSTravel.pdf.

Service found that Plaintiff was not an "arriving alien," and thus, could not adjust his status with the USCIS. *Id.*

40. Given the USCIS's decision administratively closing Plaintiff's I-485 Application, and the fact that Plaintfiff cannot seek adjustment of status with the immigration court, there are no avenues for relief for Plaintiff. Therefore, he files this Complaint, requesting that the Court compel the USICS to reopen and adjudicate his I-485 Application on the merits.

## VI.   CLAIMS FOR RELIEF

### 1.  Count 1—Violation of the APA (Notice and Comment)

41. Plaintiff incorporates by reference the allegations in paragraphs 1-40.

42. Plaintiff maintains that the new USCIS policy, which went into effect on December 20, 2019, violates the notice and comment provisions of the APA.

43. Notice of any proposed rule change must be published in the Federal Register. 5 U.S.C. § 553(b). After publication, the Government must give the public thirty days to provide comments on the proposed rule. 5 U.S.C. § 553(c)-(d). If the Government does not follow these notice and comment procedures, it has violated the APA.

44. The term "'rule' means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice

14

requirements of an agency." *Id.*

45. The USCIS previous policy provided that it had exclusive jurisdiction over all applications for adjustment of status for *all* "arriving aliens," including TPS holders with final orders of removal. *See* Exhibit 3, *supra* at Vol. 7, Part A, Ch. 3, Sec. D. As the exhibits attached demonstrate, the USCIS strictly followed the policy. *See* Exhibit 7—Adjustment of Status Decision 1; Exhibit 8—Adjustment of Status Decision 2; Exhibit 9—Adjustment of Status Decision 3; Exhibit 10— Adjustment of Status Decision 4; Exhibit 11—Adjustment of Status Decision 5. However, at the present time, the USCIS, without providing proper notice and comment, has reversed course and states that it does not have jurisdiction over the type of application filed by Plaintiff any longer. Therefore, Plaintiff maintains that the USCIS's new policy violates the APA. *See generally* 5 U.S.C. § 553.

## 2. Count 2—Violation of the APA (Arbritray, Capricious, Abuse of Discretion, and Not in Accordance with the Law)

46. Plaintiff incorporates by reference the allegations in paragraphs 1-45.

47. Plaintiff contends that under the APA, the USCIS's administrative closure of his I-485 Application was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A).

48. The U.S. Supreme Court has held that an agency's actions may be considered arbitrary, capricious, or an abuse of discretion if said actions inexplicably depart from the agency's own course of adjudication, regulations, or policies. *See INS*

15

*v. Yang*, 519 U.S. 26, 32 (1996) ("Though an agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion'").

49. In this case, the USCIS's general policy was that it retained sole jurisdiction over applications for adjustment of status filed by "arriving aliens" irrespective of whether they had TPS and final removal orders. *See* Exhibit 3, *supra* at Vol. 7, Part A, Ch. 3, Sec. D. By irrationally reversing course and declining to adjudicate these types of applications now, despite the fact that the law provides that the USCIS does have jurisdiction, the agency has acted arbitrary, capriciously, and abused its discretion. *See* Exhibit 4, *supra* at at Vol. 7, Part B, Ch. 2, Sec. A5.

50. Moreover, Plaintiff maintains that the USCIS's new policy is not the product of reasoned decisionmaking. As noted by the D.C. District Court, to survive arbitrary and capricious review, "an agency action must be the product of reasoned decisionmaking." *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012). In the case at bar, the USCIS's decision to administratively close Plaintiff's I-485 Application, based on its revised policy, was not "the product of reasoned decisionmaking" because, as discussed further below, the case law and

16

regulations expressly state that the USCIS retains jurisdiction over adjustment applications filed by "arriving aliens," irrespective of whether they have TPS and final removal orders.

51. Finally, the USCIS's administrative closure of Plaintiff's I-485 Application is not in accordance with the law.

52. The applicable federal regulations and the BIA state that the USCIS has jurisdiction to adjudicate an adjustment of status application filed by an "arriving alien," a point which the DHS has even conceded. *See Matter of Yauri*, 25 I&N Dec. at 106-07 ("DHS has stated that it recognizes that the USCIS's jurisdiction over the adjustment application of an arriving alien exists regardless of whether there is an unexecuted removal order that remains outstanding against the alien…[m]oreover, we emphasize that the existence of a final order of removal does not preclude the USCIS from granting adjustment of status to an arriving alien who is otherwise eligible for adjustment of status."); *see also* 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1).

53. An "[a]rriving alien [is] an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2.

54. A person who is paroled into the United States would be considered an "arriving alien" because while they are allowed to enter, they are not considered admitted into the United States. *See* 8 U.S.C. §§ 1101(a)(13)(B) ("An alien who is paroled

under section 1182(d)(5) of this title or permitted to land temporarily as an alien crewman shall not be considered to have been admitted."); *see also Matter of Oseiwusu*, 22 I&N Dec. 19, 20 (BIA 1998) (holding that an alien who enters the United States with a grant of parole is an "arriving alien"). And, as noted above, "[a]n arriving alien remains an arriving alien even if paroled pursuant to [8 U.S.C. § 1182(d)(5)], and even after any such parole is terminated or revoked."). 8 C.F.R. § 1.2.

55. In this case, Plaintiff is an "arriving alien" because he traveled and then returned to the United States at a port-of-entry as an applicant for admission pursuant to his grant of advance parole. *See* Exhibit 5, *supra*. Inexplicably, the USCIS contended—based on its new policy—that even though Plaintiff traveled on advance parole, he is not an "arriving alien" because his removal proceedings have not been terminated and because Plaintiff returned to the status of an alien with a final order of removal upon his return. *See* Exhibit 1, *supra*. This conclusion is erroneous as a matter of law for several reasons.

56. First and foremost, Plaintiff does not have an unexecuted order of removal, because said order was fully executed when he departed the country on advance parole. *See* 8 U.S.C. § 1101(g) ("…any alien ordered deported or removed (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported or removed in pursuance of

18

law"); 8 C.F.R. § 1241.7 ("Any alien who has departed from the United States while an order of deportation or removal is outstanding shall be considered to have been deported, excluded and deported, or removed."); *Matter of Bulnes-Nolasco*, 25 I&N Dec. 57, 58 (BIA 2009) (affirming that an alien's departure from the United States while under an outstanding order of deportation has the effect of executing the deportation order and bringing finality to the deportation proceedings); *Stone v. INS*, 514 U.S. 386, 398 (noting that deportation orders are "self-executing").

57. As noted in the attached exhibits, the USCIS has even conceded that an alien who departs on advance parole is considered to have executed his or her removal order. *See* Exhibits 10—11, *supra*. Accordingly, any assertion by the USCIS stating that Plaintiff's order of removal remains unexecuted and that he is still in removal proceedings is legally and factually erroneous based on the USCIS's own conclusions.

58. Second, the law clearly states that an alien who is paroled into the United States is an "arriving alien" and is not "admitted" into the country. *See* 8 U.S.C. § 1101(a)(13)(B) ("An alien who is paroled under section 1182(d)(5) of this title or permitted to land temporarily as an alien crewman shall not be considered to have been admitted."); *see also Matter of Oseiwusu*, 19 I&N Dec. at 19-20.

59. In the case at bar, because Plaintiff was paroled into the United States, he was

permitted to enter but was not "admitted" as that term is used in the immigration context. *See* Exhibit 5, *supra*. And since Plaintiff is an "arriving alien," only the USCIS has jurisdiction over his I-485 Application. Therefore, the USCIS's interpretation of the law—under its new policy—is entirely erroneous.

60. Third, there is no such status as "an alien with an outstanding removal order." As the Fifth Circuit noted in *Gomez v. Lynch*, there are no-subcategories of unlawful status, such as "being present without admission." 831 F.3d 652, 659 (5th Cir. 2016). Therefore, contrary to the USCIS's assertion, there can be no such status as "an alien with an outstanding removal order" under the INA. The USCIS cannot simply append Plaintiff's TPS status with the words "outstanding removal order" and call that a status because that would define the meaning of status too broadly, which is not what Congress intended.

61. Fourth, the USCIS's position that Plaintiff is not an "arriving alien" because of the Miscellaneous and Technical Immigration Immigration and Naturalization Amendments ("MTINA") of 1991 is legally incorrect since MTINA does not alter the fact that Plaintiff is an "arriving alien." Plaintiff can be an "arriving alien" simultaneously while holding TPS status in the same way that lawful permanent residents can be "arriving aliens" if they meet the requirements under 8 U.S.C. § 1101(a)(13)(C).

62. Plaintiff wishes to note that the USCIS's conclusion that he can adjust his status

with the immigration court is likewise legally erroneous. As noted above, the immigration court only has jurisdiction over an "arriving alien's" adjustment of status application if the alien: (1) properly filed the application with the USCIS while the alien was in the United States; (2) departed and returned to the United States pursuant to a grant of advance parole; (3) the application was denied by the USCIS; *and* (4) the DHS placed the alien in removal proceedings *after* the alien's return to the United States on advance parole or *after* the application was denied. *See* 8 C.F.R. § 1245.2(a)(1)(ii).

63. The immigration judge does not have jurisdiction over any I-485 Application that Plaintiff might file in removal proceedings because he filed his adjustment of status application with the USCIS *after* he departed and returned to the United States on parole, not before, and he did not return to pursue that application. *See Matter of Silitonga*, 25 I&N Dec. 89 (BIA 2009) (finding that under the regulations, "Immigration Judges have no jurisdiction to adjudicate an application filed by an arriving alien seeking adjustment of status, with the limited exception of an alien who has been placed in removal proceedings *after* returning to the United States pursuant to a grant of advance parole to pursue a *previously filed* application") (emphasis added). So, while the DHS can certainly initiate new removal proceedings against Plaintiff, he will simply not be able to pursue adjustment of status with the immigration judge.

64. In sum, given the law and evidence presented, Plaintiff maintains that judicial review under the APA is proper in this case because the USCIS has acted arbitrarily, capriciously, has abused its discretion, and has not acted in accordance with the law.

## Count 3—Violation of the APA (Retroactivity)

65. Plaintiff incorporates by reference the allegations in paragraphs 1-64.

66. Plaintiff maintains that by retroactively applying the USCIS's new policy to his I-485 Application, the agency violated the APA.

67. The U.S. Supreme Court recently held that when an agency abruptly changes course on a well-settled policy, the agency must take reliance interests into account. *See Dep't of Homeland Sec. v. Regents of Univ. of California*, 140 S.Ct. 1891, 1913 ("When an agency changes course, as DHS did here, it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account") (citing to *Encino Motorcars, LLC.*, 136 S. Ct. at 2126) (internal quotations omitted)). If these reliance interests are not taken into account, a violation of the APA has occurred. *Id*.

68. In this case, when Plaintiff filed his I-485 Application, he relied on the USCIS's previously policy that USCIS retains jurisdiction to adjudicate said application for "arriving aliens" who have TPS and final removal orders. Now, however, because the USCIS abruptly changed its policy, it had to have taken into account

the fact that Plaintiff relied on its previous policy in adjudicating Plaintiff's I-485 Application. Because the USCIS did not do so, it has violated the APA. *Id.*

### Count 4—Violation of Due Process (Retroactivity)

69. Plaintiff incorporates by reference the allegations in paragraphs 1-68.

70. Plaintiff maintains that the USCIS, by retroactively applying its new policy to his case, violated Plaintiff's Fifth Amendment Due Process rights.

71. The Supreme Court has held that retroactively applying a policy (or statute) is not permitted when it would offend the "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Landgraf*, 114 S. Ct. at 1499. When conducting the retroactivity analysis, a court "must ask whether the new [policy] attaches new legal consequences to events completed before its enactment," and inquire into whether there would be "unfairness in imposing new burdens on persons after the fact." *Id.* at 1500.

72. In this case, Plaintiff was not given fair notice of the USCIS's drastic change in policy regarding adjustment of status applications for TPS recipients with final removal orders because the USCIS did not go through the appropriate notice and comment requirements under the APA. Further, as noted above, Plaintiff relied on the previous USCIS policy that it had sole jurisdiction to adjudicate adjustment applications. Finally, Plaintiff had a settled expectation that the USCIS would adjudicate his case on the merits, because the USCIS's previously

23

policy stated that it had jurisdiction over the I-485 Application at the time of its filing.

73. The USCIS's new policy attaches new legal consequences to Plaintiff's case because prior to the new policy, the USCIS's policy was that it retained exclusive jurisdiction over his I-485 Application. Now, however, since the USCIS has reversed course, and Plaintiff has no other recourse, new legal consequences and burdens that are unfair have been imposed on Plaintiff. Therefore, Plaintiff's Due Process rights have been violated by the USCIS's decision to administratively close his I-485 Application.

### Count 5—Violation of the Appointments Clause and FVRA

74. Plaintiff incorporates by reference the allegations in paragraphs 1-73.

75. During the period when the update to the Policy Manual was developed, approved, and published, neither the DHS nor the USCIS was led by a lawfully serving Secretary or Director.[3] Both Offices were—and are—by law required to remain vacant, so no action, function or duty of either Office may be performed during such vacancy. Only a properly serving Secretary or Acting Secretary of

---

[3] On August 14, 2020, the Government Accountability Office, an independent arm of Congress, determined that both Defendant Wolf and Defendant Cuccinelli were invalidly appointed to their positions and ineligible to serve in said positions. *See* Kyle Cheney. Politico. GOA find Chad Wolf, Kenneth Cuccinelli are ineligible to serve in their top DHS roles. politico.com/news/2020/08/14/gao-chad-wolf-ken-cuccinelli-ineligible-dhs-395222 (accessed Aug. 14, 2020). On December 4, 2020, a U.S. District Court Judge found the same. *See Order*, *Batalla Vidal v. Wolf*, 1:16-cv-4756-NGG-VMS (Dec. 4, 2020).

Homeland Security, or Director or Acting Director of USCIS, could promulgate the change to the Policy Manual. Therefore, the updated Policy Manual and new USCIS policy are invalid for this independent reason.

76. Pursuant to the Appointments Clause of the U.S. Constitution, the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers, of the United States" though Congress may "by Law vest the Appointment of such inferior Officers as they think proper, in the President alone, in the Courts of Law, or in the Heads of the Departments." U.S. Const. Art. II, § 2, cl. 2.

77. The Appointments Clause "serves both to curb Executive abuses of the appointment power . . . and to promote a judicious choice of persons for filling the offices of the union." *Edmond v. United States*, 520 U.S. 651, 659 (1997) (internal quotations marks and alterations omitted).

78. Both the Secretary of Homeland Security and the Director of USCIS may be appointed by the President only with the advice and consent of the Senate. 6 U.S.C. §§ 112(a)(1), 113(a)(1)(E).

79. The Federal Vacancies Reform Act, 5 U.S.C. § 3345 et seq. ("FVRA"), is the "exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and

consent of the Senate" ("PAS Positions"), unless a statute provides otherwise. 5 U.S.C. § 3347(a).

80. The FVRA limits who may serve as the acting head of an agency "[i]f an officer of an Executive agency . . . whose appointment . . . is required to be made by the President, by and with the advice and consent of the Senate . . . resigns." *Id*. § 3345(a).

81. When such office is vacant, only a validly serving Acting Secretary may perform the functions or duties of the Position.

82. If there is not an FVRA-compliant official in place to perform the functions and duties of a PAS Position, the FVRA requires that "the office shall remain vacant." *Id*. § 3348(b)(1).

83. At the time the USCIS promulgated the updated Policy Manual, the FVRA required that both the Office of the Secretary of Homeland Security and the Office of the Director of USCIS remain vacant. As a result, no officer could perform the function or duties of the Director of USCIS, so no officer could promulgate the updated Policy Manual.

84. Importantly, the FVRA provides that any action taken by an official who occupies the position contrary to the FVRA "shall have no force or effect." *Id*. § 3348(d)(2). Such actions "may not be ratified." *Id*. Accordingly, the new policy issued by the USCIS and incorporated into the Policy Manual should have no

force or effect and cannot be ratified.

## VII.   EXHAUSTION

85. Plaintiff incorporates by reference the allegations in paragraphs 1-84.

86. As noted above, Plaintiff is not required to exhaust his administrative remedies with respect to the administrative closure of his I-485 Application because he is contesting a "final" agency action that is subject to judicial review under the APA.

87. The language of 5 U.S.C. § 704 states that an agency action is "final" without regard to whether an alien seeks reconsideration or appeal to a higher agency authority, *unless* there is a statute or regulation that requires the alien to file an appeal and the agency action is inoperative during the appeal.

88. In this case, the USCIS decision states that Plaintiff cannot appeal its decision to administratively close his I-485 Application. *See* Exhibit 1, *supra*. Therefore, the USCIS's decision was the final agency action. *See Darby*, 509 U.S. at 137. As such, there can be no judicially-imposed exhaustion requirement and judicial review is proper before this Court.

## VIII. CONCLUSION

89. For the aforementioned reasons, the decision to administratively close Plaintiff's I-485 Application was arbitrary, capricious, an abuse of discretion, not in accordance with the law, a violation of Plaintiff's Due Process rights, and an

application of policy that was not lawfully promulgated. Judicial review by this

Court is therefore warranted under the APA.

## IX.    PRAYER FOR RELIEF

90. Wherefore, Plaintiff respectfully requests that this Court:

    a.  accept jurisdiction and venue as proper;

    b.  issue a declaratory judgment that the USCIS's new policy violated the notice and comment provisions of the APA;

    c.  issue a declaratory judgment that the administrative closure of Plaintiff's I-485 Application was arbitrary, capricious, an abuse of discretion, and not in accordance with the law;

    d.  issue a declaratory judgment that the USCIS has jurisdiction to adjudicate Plaintiff's I-485 Application;

    e.  issue a declaratory judgment that the administrative closure of Plaintiff's I-485 Application was a violation of Plaintiff's Due Process rights;

    f.  issue a declaratory judgment that USCIS's new policy and changes to the policy manual are unlawful and that there was no lawful authority for their issuance;

    g.  issue an order under the APA to compel the USCIS to reopen and adjudicate Plaintiff's I-485 Application on the merits;

    h.  grant reasonable attorney's fees, expenses, and costs of court pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

    i.  grant Plaintiff all other relief as the Court may deem just and proper.

Respectfully submitted,

GONZALEZ OLIVIERI LLC


*/s/ Raed Gonzalez*
_____
Raed Gonzalez, Esq.
Texas Bar No. 24010063
2200 Southwest Freeway, Suite 550
Houston, Texas 77098
Phone: (713) 481-3040,
Fax: (713)588-8683
rgonzalez@gonzalezolivierillc.com
*Counsel of Record for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| Javier Orlando Osorto,<br><br>*Plaintiff*,<br><br>v.<br><br>Pete T. Gaynor, Acting Secretary of the U.S. Department of Homeland Security; Kenneth T. Cuccinelli, Acting Director of the U.S. Citizenship and Immigration Services; Wallace L. Carroll, Houston Field Office Director of the U.S. Citizenship and Immigration Services,<br><br>*Defendants*. | Case No. 4:21-cv-162<br><br><br>Date: January 18, 2021 |

## INDEX OF EXHIBITS

Exhibit 1—Notice of Administrative Closure
Exhibit 2—Previous USCIS Policy Memorandum
Exhibit 3—Previous USCIS Policy Manual
Exhibit 4—Current USCIS Policy Manual
Exhibit 5—Parole Document
Exhibit 6—Form I-94
Exhibit 7—Adjustment of Status Decision 1
Exhibit 8—Adjustment of Status Decision 2
Exhibit 9—Adjustment of Status Decision 3
Exhibit 10—Adjustment of Status Decision 4
Exhibit 11—Adjustment of Status Decision 5